UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.             ) | Docket No. 2:24-CR-7 |
| ) | |
| JEAN AUDATE         ) | |

**SENTENCING MEMORANDUM ON BEHALF OF JEAN RICHARD AUDATE**

Jean Richard Audate submits this sentencing memorandum in support of his request that this Court imposes a sentence of 18 months to run concurrently with the sentence he is currently serving for his Rhode Island conviction. A sentence of 18 months in is squarely within the range and terms of the plea agreement entered by Mr. Audate and government. Moreover, the requested sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Mr. Audate has done everything he can to make amends for his action in this case including fully cooperating with the government and providing all the information available to him; he voluntarily gave of his passwords for access to all his devices, made phones can and went and took a video of the location where he delivered the money. Mr. Audate has clearly made every effort to make amends for what he has done and is demonstrably remorseful.

I.     FACTUAL BACKGROUND

Prior to his involvement in this scheme, Mr. Audate had never been convicted of a crime, although he has a prior arrest, the case was dismissed. Mr. Audate got involved in this scheme initially, not realizing the nature of what was going on. He was asked to look for addresses and was sent to pick up packages from various locations, which was all that

1

he did. That's what he was doing when he was arrested in New Haven, Connecticut in March of 2021. After his arrest, Mr. Audate took responsibility, cooperated and pled guilty.

While on pre-trial release he received a phone call to pick up packages, Mr. Audate refused. After being asked repeatedly, although not directly threatened, he felt pressured and somewhat obligated. He collected funds on a few occasions and drop and delivered them to someone in the diamond district in New York. Mr. Audate is adamant that he was not compensated for these transactions although he admits receiving about $500 per pickup previously.

When agents came to Mr. Audate's apartment in New York he cooperated fully. He turned over all his devices and provide the agents with his passwords. He later worked diligently with the agents providing them with details of his involvement and what he did and when he did it to the best of his recollection. Mr. Audate made phone calls and went the extra mile to make a recording of the location where he dropped the money off.

My Audate and his younger brother were raised by a single parent. Life was very difficult, with Mr. Audate, the eldest child, took on the role of a parent caring for his younger brother. Despite the challenges, Mr. Audate attended and graduated from S. John's University with a bachelor's degree in business marketing. His family was proud of him and for Mr. Audate, he believed that this would open the world of opportunities for him. Unfortunately, that was not the case. Mr. Audate faced long periods of unemployment. The 2020 pandemic made things worse for him and his family, they were struggling financially.

Mr. Audate asks the Court to consider not just his criminal acts, but also his lack

of prior criminal history, his up brining, his accomplishments; graduating from college with a bachelor's degree, in spite of it all.

### A. Collateral Consequences

Mr. Audate is now a convicted felon. This limits his ability to obtain certain employment and because of the nature of his conviction, his interaction with financial institutions is also limited. He is also no longer permitted on the campus of his alma mater. Something that he celebrated and represented a source of great pride for his family now brings them shame. He can no longer avail himself of the resources of the institution he once celebrated. Some of these are imposed by the court, others unintended but all have a lasting negative impact on Mr. Audate.

### B. Advisory Guideline Range

The Probation office calculated an advisory guideline range of 108 to 135 months, resulting from an adjusted offense level of 31 and Criminal History Category I. Mr. Audate do not believe that a 2-point increase should be added for "Sophisticated Laundering". He denies creating any LLCs in furtherance of the conspiracy. Those entities existed long before Mr. Audate became involved in the conspiracy, and they were never used to transmit funds. Mr. Audate made clear that any funds he collected was delivered to someone; his LLCs were never involved. His role never involved transmitting funds electronically, by any means.

In support of his request for a concurrent sentence, Mr. Audate points to the fact that his enhancements – amount of loss $1.5 million instead of $408, 000) result in an offense level of (16 instead of 12) +4; ten or more victims (2 levels instead of 0) +2; and an additional (2 levels instead of 0)+2 for large number of victims - resulting in an 8 level increase, is based on his Rhode Island case. Mr. Audate concedes that these activities fall

3

within the framework of relevant conduct, and he is aware that it is not considered double jeopardy to use it as an enhancement, however the significant level increase based on prior conduct, warrants consideration.

II.  **A SENTENCE OF EIGHTEEN MONTHS' CONCURRENT PLUS THREE YEARS OF SUPERVISED RELEASE WOULD BEST SATISFY THE GOALS OF § 3553(a).**

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes se[t forth in paragraph (2)," which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)–(7).

"While the fraud guideline focuses primarily on aggregate monetary loss and victimization, it fails to measure a host of other factors that may be important, and may be a basis for mitigating punishment, in a particular case." Allan Ellis, John R. Steer, Mark Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 Crim. Just. 34, 37 (2011); *see also United States v. Ovid*, slip op., 2010 WL 3940724, *1 (E.D.N.Y. Oct. 1, 2010) ("[T]he fraud guideline, despite its excessive complexity, still

4

does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so.").

### 1. Mr. Audate was not motivated by greed

A defendant's motive is highly relevant at sentencing. *See Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993); *United States v. Mahan*, 2007 WL 1430288, at *3 (10th Cir. 2007) (sentence was procedurally unreasonable where district court refused to consider defendant's stated motive for possessing unloaded shotgun, *i.e.*, that he had been violently beaten by three men and sought to defend his wife); *United States v. Milne*, 384F. Supp. 2d 1309, 1310-11 (E.D. Wis. 2005) (granting variance where "defendant did not take the bank's money out of greed or a desire to live a lavish lifestyle, [but in effort] to keep a sinking business afloat"); *United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) (defendant did "not act for personal gain or for improper personal gain of another").

Mr. Audate was at the lowest level in this scheme. Mr. Audate's involvement in this scheme began with a phone call from his cousin during a time when he was facing serious economic hardship and had difficulty finding employment. Mr. Audate was asked to travel to various locations to pick-up packages. In return, he would receive a nominal sum, $500 maximum. After his arrest in the Rhode Island matter, Mr. Audate discontinued his involvement in the scheme.

Mr. Audate was not living a lavish lifestyle. He resided in a government subsidized apartment paying $700 a month rent, he was still working as a parking attendant making $15.50 per hours and when he loss that job because he missed work or would arrive late because he was attending court and or proffer sessions, he started looking for another immediately. In fact, Mr. Audate had a virtual interview scheduled

with a health insurance company as a customer service representative two days after the agents took his laptop. Mr. Audate was driving a 2008 Honda Pilot. Nothing about his lifestyle suggested that he was doing this out of greed.

        2.     **Mr. Audate's offense was motivated by need to support others**

Mr. Audate is the eldest child. In addition to his brother in the United States, he has five siblings residing in Haiti that he assists financially. Mr. Audate will be the first to tell you that he chose the wrong path. His decision to get involved with this scheme was a terrible one and its not the way he intends to live his life. He makes no excuses but does wish the Court to know that he did not use the proceeds of his ill-gotten gain to by fancy cars and clothes, take trips or live in fancy homes. He was trying to make ends meet and help his family. Looking back, he realizes his decision. Although he did not speak with or meet the victims, collecting the money and passing it on does not make him any less culpable.

        3.     **The seriousness of the offense has been partially mitigated by Mr. Audate's cooperation in both the Rhode Island and Vermont matters.**

Many individuals were recently arrested that was connected to the scheme. While Mr. Audate will not receive a "5K letter" or is scheduled to testify in those case, it is without that his interaction with the authorities was beneficial. When Mr. Audate was initially approached by FBI agents in his apartment in New York for the Vermont matter, Mr. Audate immediately cooperated by providing access to his phone and computer by giving agents his password. In continued his cooperation by meeting with agents for several proffer sessions in which he provided information, in painstaking detail regarding his involvement in the scheme. Mr. Audate went out, independently, and make a video

6

recording of the location where he took the money that he was given.

      **4.    The sentence Mr. Audate is currently serving more than accounts for his involvement and any benefits he received.**

Mr. Audate is currently serving a 30-months sentence for delivering picking packages and getting $500 in return. He did not enjoy and fringe benefits or lived it up while he was outside. There nothing waiting for him when he is released from prison. He cannot show his face on his school campus.

### B. Need to Provide Restitution to Victims of the Offense

In determining the appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. §3553(a)(7); *see also, e.g., United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense . . . is better served by a non-incarcerated and employed defendant"); *United States v. Peterson*, 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis. 2005) (granting a variance so that defendant could work and pay restitution).

Mr. Audate wishes to provide restitution to the victims in this case. He understands that it is a monumental task given the amount of loss, but he wants to do his part. He is college-educated, hardworking, and is looking forward to turning his life around. If additional time was to be added to Mr. Audate's current sentence, it would significantly diminish his ability to make meaningful restitution to the victims. This Court should seek to maximize, rather than eliminate, Mr. Audate's ability to make the restitution to the victims.

### III. CONCLUSION

For the foregoing reasons, Mr. Audate respectfully submits that a sentence of 18 months' concurrent followed by three years' supervised release is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

Respectfully submitted,

Eon R. Smith